IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEVEN F. GILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV426 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Steven F. Gillis, brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security

denying his claims for a Period of Disability ("POD"), Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.

The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB, a POD, and SSI in January of 2011 alleging a

disability onset date of January 1, 2006. (Tr. 224-238.)[1]  The applications were denied

---

[1] Transcript citations refer to the administrative record. Additionally, Plaintiff was incarcerated, and, thus, ineligible for benefits, from the alleged onset date until January 2011. (Tr. 266, 514.)  42 U.S.C. §§ 402(x)(1)(A)(i), 1382(e)(1)(A).

initially and upon reconsideration. (*Id.* at 149-156, 162-179.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 180-82.) Present at the September 5, 2012 hearing were Plaintiff, his attorney, and a vocational expert ("VE"). (*Id.* at 35-88.) The ALJ determined in his November 23, 2012 decision that Plaintiff was not disabled under the Act. (*Id.* at 7-26.) On March 28, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for review. (*Id.* at 1-4.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DISCUSSION

The ALJ followed the well-established five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). Here,

2

although the ALJ found that Plaintiff had performed some work during the alleged period of disability, working as a security guard and making and selling fish sandwiches, the ALJ determined that Plaintiff had not engaged in *substantial* gainful activity since his alleged onset date of January 1, 2006. (Tr. 12.) The ALJ next found in step two that Plaintiff had the following severe impairments: mild degenerative disc disease of the lumbar and cervical spine; mild osteoarthritis of the right hand; mild post traumatic stress disorder ("PTSD"); depression; and a substance addiction disorder. (*Id.* at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 14.)

Prior to step four, the ALJ determined Plaintiff's RFC. (*Id.* at 16-24.) The ALJ determined that Plaintiff retained the RFC to perform medium work with certain additional limitations. (*Id.* at 16.) Specifically, the ALJ concluded that Plaintiff was limited to understanding, remembering, and carrying out simple instructions; in a low stress environment, which meant that he could not work in a fast-paced production environment, but could only work in an environment where he made simple work-related decisions and in which there were few or no changes in the work setting. (*Id.* at 16.) The ALJ found too that Plaintiff could work in proximity to, but not in coordination with, coworkers and supervisors, and that he should not have contact with the public. (*Id.*)

At the fourth step of the sequence, the ALJ determined that Plaintiff could not perform his past relevant work as a caddy, cleaner, golf attendant, grill man, security guard, stocker, or assembler. (*Id.* at 24.) At the fifth step of the sequence, the ALJ concluded that considering the claimant's age (50 on the alleged onset date), education (at least a high school

3

education), and RFC (described above), there were jobs in the national economy that Plaintiff could perform. (*Id.* at 24.) Specifically, based on VE testimony, the ALJ concluded that Plaintiff could perform work as a laundry checker and office cleaner. (*Id.* at 25.)

## IV. ANALYSIS

Plaintiff makes two arguments. First, he asserts that the ALJ failed to properly weigh the Department of Veteran Affair's ("VA") opinion on disability. (Docket Entry 16 at 1.) Second, he contends that the ALJ failed to properly weigh the "acceptable medical source" opinion of examining psychiatrist Scott T. Schell, M.D. (*Id.*)

### I. The ALJ's Assessment of the VA's Determination Is Supported by Substantial Evidence.

Plaintiff contends that the ALJ erred in evaluating a prior disability determination by the VA. (Docket Entry 16 at 7-14.) More specifically, the VA issued Plaintiff a VA Disability Rating Decision, dated January 26, 2012, and effective as of May 4, 2011, which granted him a 50% service connected rating for PTSD. (Tr. 252-256.) The ALJ attributed the VA determination "little weight." (*Id.* at 23.) Evaluating the strength of Plaintiff's argument requires an understanding of *Bird v. Commissioner*, 699 F.3d 337, 343 (4th Cir. 2012) and SSR 06-03p.

#### A. *Bird v. Commissioner*

In *Bird*, the Fourth Circuit considered two issues. First, it addressed when an ALJ must give retrospective consideration to medical evidence generated after the date last insured ("DLI"). The claimant in *Bird* argued that the ALJ erred in failing to consider retrospectively evidence in the form of a VA rating decision created after the DLI. *Bird*, 699 F.3d at 338–39, 340. The Fourth Circuit held that the ALJ was required to give retrospective

4

consideration to the VA's determination, even though it post-dated the claimant's DLI, because the evidence placed the claimant's "symptoms in the context of his work and social histories, drawing a link between his current condition and his condition predating his DLI." *Id.* at 342.

Second, and more importantly for this case, in *Bird* the Fourth Circuit addressed "the precise weight that the SSA must afford to a VA disability rating." *Id.* at 343. In addressing this question, the Fourth Circuit noted that, "the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* at 343. It reasoned further that "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.* (citations, internal quotations omitted).

From this, the Fourth Circuit concluded that "[b]ecause the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Thus, "in making a disability determination, the SSA [Social Security Administration] must give substantial weight to a VA disability rating." *Id.* "However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.* Consequently, the Fourth Circuit held in *Bird* that

5

the ALJ erred in finding Bird's VA disability rating irrelevant based solely on the fact that the VA decision became effective after Bird's DLI. *See id.* at 346 ("[B]ecause the ALJ made two errors of law in conducting his analysis of the evidence concerning the issue whether *Bird* was disabled before his DLI, we vacate the district court's judgment and remand the case to the district court for further remand to the ALJ for proceedings consistent with the principles of law expressed in this opinion.").

### B. *SSR 06-03p*

The Social Security Rulings also speak to whether and when an ALJ is obligated to consider disability determinations from other agencies. According to SSR 06–03p:

> Our regulations . . . make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner . . . . However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies . . . . Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

SSR 06–03p, *Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939, at *6 (2006); 20 C.F.R. §§ 404.1512(b)(v), 416.912(b)(v); *see also* 20 C.F.R. §§ 404.1504, 416.904.

### C. The ALJ Clearly Demonstrated That His Decision to Give "Little Weight" to the VA Determination Was Supported by Substantial Evidence.

As noted, the VA issued Plaintiff a VA Disability Rating Decision, dated January 26, 2012 and effective as of May 4, 2011, which granted him a 50% service connected rating for PTSD. (Tr. 252-256.) In according "little weight" to this determination, the ALJ stated:

6

The undersigned is aware that the claimant has a Veteran's Administration service connected rating of 50 percent for PTSD (Ex. 8D). Further evidence from the Veteran's Administration (VA) reveals that the claimant has a 20 percent impairment rating for lumbosacral or cervical strain (Ex. 19F). While the undersigned is not bound by disability decisions made by other governmental agencies, the undersigned must, pursuant to SSR 06-3p, nonetheless consider these disability decisions. Per SSR 06-03p, decisions from other agencies provide insight into the claimants impairments only to the extent they reveal the evidence used to reach the decision of disability. The Ruling instructs the undersigned to evaluate the opinion evidence from medical sources, as well as "non-medical sources" who have had contact with the individual in their professional capacity, used by other agencies that are in our case record, in accordance with Agency policy. While the decision at issue has been submitted and made part of the record (Ex. 8D), the services connection evaluation performed on October 28, 20111 by QTC Medical Services for the claimant's PTSD have not been submitted. Therefore, the undersigned cannot tell what medical or vocational evidence was used to reach the conclusion of disability or whether said evidence was similar to or different from the evidence of record before the undersigned. As such, the decision of the VA as to the claimant's disability rating provides no insight into the claimant's impairments and the undersigned accords it little weight. More importantly, the undersigned finds that a VA rating of 50 percent for PTSD is not consistent with the longitudinal medical evidence before the undersigned, which reveals that the claimant has had a good response to treatment, that upon examination, his mental status is largely normal, and that his conditions have resulted in minimal symptoms. To the extent that the VA's rating decision was based upon the same medical evidence before the undersigned, it has been considered as outlined herein.

(*Id.* at 23.)

The undersigned agrees with Defendant that this is not a case where the ALJ failed to explain the consideration given to the VA rating. (Docket Entry 20 at 8.) Moreover, the undersigned agrees further with Defendant that the ALJ considered Plaintiff's VA

determination in light of the entire record and gave proper reasons to afford it less weight.

As an initial matter, the ALJ gave the VA rating less weight because "decisions from other agencies provide insight into the claimant's impairments only to the extent they reveal the evidence used to reach the decision of disability." (Tr. 23 (citing SSR 06-03p)). While Plaintiff submitted the VA decision into the record, he did not submit the evaluation performed by QTC Medical Services on October 28, 2011 upon which the rating appears to be primarily based. (Tr. 23 *referencing* Tr. 253-54.) It is also important to note that the ALJ actually held the record open here after Plaintiff's administrative hearing specifically so Plaintiff could submit the evaluation to the Commissioner. (*Id.* at 45.) Defendant correctly points out that the burden is on a claimant to present evidence of his disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). This includes furnishing medical evidence supporting his claim. 20 C.F.R. §§ 404.1512(a), 1516; 416.912(a). The undersigned can see no error in the ALJ properly noting that the record did not contain the QTC Medical Services report.

And, even setting this issue aside, the ALJ's handling of the VA determination is supported by substantial evidence. This is because the ALJ also gave the VA rating less weight because it was inconsistent with the longitudinal medical evidence, which demonstrated that Plaintiff had a good response to treatment, largely normal mental status examinations, and minimal symptoms.[2] (Tr. 23.)

---

[2] *See, e.g.*, *Hart v. Colvin*, No. 3:14-CV-00169-FDW, 2015 WL 470448, *3-4 (W.D.N.C. Feb 04, 2015) (affirming ALJ's decision to afford little weight to Medicaid disability determination where it was not consistent with the record as a whole); *Bennett v. Colvin*, No. 13–871, 2015 WL 354170, at *8 (E.D.N.C. Jan.17, 2015) ("The court concludes that the ALJ's assessment of the VA's decision is supported by substantial evidence and based on proper legal standards. The court accordingly rejects

8

More specifically, an ALJ must evaluate all of the medical opinions in the record in light of: the examining relationship, the treatment relationship, the degree to which the opinion relies on relevant evidence, the consistency of the opinion with the record as a whole, the specialization of the source of the opinion, and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c), 416.927(c). A medical source's opinion must be both well-supported by medical signs and laboratory findings as well as consistent with other substantial evidence in the case record. *Id.* "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Id.* (citation omitted); *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Here, the ALJ accurately observed that objective medical evidence revealed that during a June 2011 evaluation with Mary Fruit, Psy.D., Plaintiff was neatly dressed with good grooming/hygiene; was polite and cooperative; had normal speech; had logical and goal-directed thoughts without evidence of disorder or delusion; had no hallucinations; had insight and judgment within normal limits; had good self-esteem; and no problems with concentration. (Tr. 20 *referencing* Tr. 511-15.) The ALJ further correctly noted that Dr. Fruit indicated that Plaintiff's evaluation scores did not support the presence of full criteria for a diagnosis of PTSD or major depressive disorder. (Tr. 20 *referencing* Tr. 517). Dr. Fruit

---

plaintiff's challenge to it."); *Johnson v. Colvin*, No. 13-509, 2014 WL 4636991, at *8-10 (E.D.N.C. Sept.16, 2014) (finding no error under *Bird* standard for ALJ according VA decision less weight); *Mills v. Colvin*, Case No. 5:13-cv-432-FL, 2014 WL 4055818, at * 5 (E.D.N .C. Aug. 14, 2014) (same).

indicated further that Plaintiff was receiving treatment for depressive disorder and the absence of several major depressive episode symptoms was an indicator that his anti-depressant medication was effectively treating his symptoms. (Tr. 20 *refereeing* Tr. 517-18.)

The ALJ also accurately observed that in August of 2011, Plaintiff reported his mood swings were less, and psychiatrist Mizanur Rahman, M.D., indicated that he had a generally unremarkable mental status examination—he made fair eye contact, did not have abnormal involuntary movement, and his speech was not pressured—apart from his mood being "down" and his affect constricted. (Tr. 20 *referencing* Tr. 483-84.) Evidence from 2012 also demonstrated that Plaintiff had only mild limitations, as indicated by his active participation and insight gained in group therapies. (Tr. 21 *referencing* Tr. 579-84.) Additionally, by July 2012, Plaintiff denied hearing voices and reported he was recently married.[3] (Tr. 21 *referencing* Tr. 622-23.) And, as the ALJ noted, Plaintiff testified that he was able to attend school in that he completed one semester of community college where he passed all of his classes without special accommodations with the help of support and tutoring from Project Promise.[4] (Tr. 23, 46-51.) Given this evidence, the ALJ properly considered the VA rating

---

[3] Plaintiff also told Dr. Fruit that he was doing "odd jobs a little here and there" and had applied for "social security disability income, so [he] cannot work too much or it will impact his claim." (Tr. 514.) He also reported to Dr. Rahman in June 2011 that he was doing some work part-time, and Dr. Rahman noted that Plaintiff's mental status examination was generally normal apart from depressed mood and constricted affect. (*Id.* at 521-23.)

[4] Plaintiff contends that the ALJ ignored his testimony describing special assistance in his enrollment in community college. (Docket Entry 16 at 13 *referencing* Tr. 49-50, 72-75.) However, at the hearing, Plaintiff stated that while he saw a psychologist once a week at the community college, he did not receive different treatment from other students in terms of test taking and homework. (Tr. 49-50.) And, given the considerable evidence supporting the ALJ's conclusion that Plaintiff was not disabled, and given that the ALJ discussed Plaintiff's time at community college at some length, any error here would be, at most, harmless. (*Id.* at 15, 23.)

10

and, consistent with *Bird* and governing regulations, sufficiently articulated proper reasons for giving it less weight.[5]

## II. The ALJ's Assessment of Dr. Schell's Opinion Is Supported by Substantial Evidence.

Plaintiff next contends that the ALJ committed reversible error in his analysis of the medical opinion of examining psychiatrist Scott T. Schell, M.D. (Docket Entry 16 at 1, 14-20.) As explained below, the ALJ's assessment of Dr. Schell is well-supported.

As noted, an ALJ must evaluate all of the medical opinions in the record in light of: the examining relationship, the treatment relationship, the degree to which the opinion relies on relevant evidence, the consistency of the opinion with the record as a whole, the specialization of the source of the opinion, and other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c), 416.927(c). Here, upon considering Dr. Schell's two reports, the ALJ accurately noted that each report is vague, conclusory, and not expressed in vocationally relevant terms—that is, neither report provides functional limitations arising from Plaintiff's mental impairments. (Tr. 22 *referencing* 457-460, 467-70.) Thus, although Dr. Schell concluded that Plaintiff's mental impairments "adversely influenced" his behavior (Tr. 459, 469), Dr. Schell did not provide any specific functional limitation beyond those set forth in the RFC that, if supported, could be incorporated into an RFC assessment. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Consequently, these reports were not entitled to any particular weight.[6]

---

[5] Insofar as Plaintiff argues in Section I above that Dr. Schell's opinions support his VA rating, the argument is not persuasive for the reasons set forth below in Section II.

[6] The Court notes too that the "limitations" assessed by Dr. Schell do not indicate that Plaintiff was

11

And even setting that issue aside, the ALJ properly declined to give Dr. Schell's opinions greater weight because Dr. Schell's observations were in conflict in and of themselves and in addition to other medical records. (Tr. 20, 22.) Specifically, Dr. Schell noted that Plaintiff was able to do chores and go to church on a regular basis, was able to form a working relationship and sustain concentration, and had a global assessment of functioning ("GAF") score of 60 in March 2011, a score on the borderline between mild and moderate symptoms.[7] (Id. at 20, 457-59). Dr. Schell also indicated that Plaintiff was cooperative and a reliable historian, was oriented, could sustain concentration, and had a generally normal mental status examination in March 2011; then two months later, at the second examination, presented with what the ALJ noted were symptoms greatly out of proportion with those present in the first examination. (Id. at 23 (describing Plaintiff's presentation as "inconsistent"), 458, 467-68.) In fact, the ALJ specifically noted that Plaintiff's May 2011 presentation to Dr. Schell was at odds with his March 2011 presentation to Dr. Schell and was also at odds with his presentation to the VA (described in greater detail in Section I above) in the summer of 2011. (Tr. 23 (describing May 2011 visit with Dr. Schell as "completely inconsistent with his presentation to treating sources at the VA during

---

completely precluded from performing all work.

[7]  The GAF is a scale ranging from zero to one hundred used to rate an individual's psychological, social, and occupational functioning. See Am. Psychiatric Assoc, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV") 32–34 (4th Ed., Text Revision 2000). Scores between 51-60 indicate moderate symptoms or moderate difficulties in social, occupational, or school functioning. Id. Scores between 61 and 70 indicate mild symptoms or some difficulty in social, occupational, or school functioning. Id. The Fifth Edition of the DSM discontinued use of the GAF, in part because of "conceptual lack of clarity" and "questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed., Am. Psychiatric Ass'n 2013).

this same period of time" and "further inconsistent with his presentation to same examiner just two months prior").) And, as Defendant correctly points out, Dr. Schell's reports appeared based in large part on Plaintiff's self-reporting, which the ALJ found were not fully credible based on his reported daily activities, including caring for his mother, attending school, working part-time, and getting engaged and then married. (Tr. 23-24). *See Craig,* 76 F.3d at 590 n.2. For these reasons, the ALJ properly gave these reports little weight.[8]

The state agency physicians also reviewed the medical evidence and determined that, given his ability to engage in daily activities and records indicating generally unremarkable mental status examinations, Plaintiff could perform simple, routine, repetitive work with limited social interaction. (Tr. 94-98, 121-26.) *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *Mitchell v. Astrue,* Civil Action No. 2:08cv632, 2009 WL 4823862, at *7 (E.D. Va. Dec. 11, 2009). At the initial level of review, Dr. Schell's March 2011 report—his only existing medical opinion on Plaintiff at the time—was given only "moderate" weight because it relied heavily on Plaintiff's own subjective reports and the diagnoses of schizoaffective and somatization disorders were not entirely consistent with the other medical evidence of record. (Tr. 98.) At the reconsideration level, the state agency physician gave Dr. Schell's subsequent May 2011 report only "little weight" because it was not consistent with the other record evidence, but gave Dr. Schell's earlier March 2011 opinion "great weight" because it was consistent with other record evidence. (*Id.* at 121.)

Plaintiff contends that it was inconsistent and therefore material error to give "great weight" to the opinions of the non-examining state agency medical consultants (one of

---

[8] Insofar as Plaintiff argues in Section II above that his VA rating supports Dr. Schell's opinions, the argument is not persuasive for the reasons set forth above in Section I.

13

whom gave Dr. Schell's March 2011 report "great weight") while at the same time giving Dr. Schell's two opinions "little weight." (Docket Entry 16 at 19-20.) Yet Plaintiff's argument is not persuasive and any error here is at most harmless.

First, in giving the non-examining physicians "great weight," the ALJ appeared to be referencing no more than the non-examining physicians' opinions on Plaintiff's *physical limitations*. (Tr. 23.) Second, even assuming the contrary—that is, even assuming that the ALJ intended to give "great weight" to the opinions of the non-examining state agency physicians as to both Plaintiff's physical *and* mental limitations—the decision of the ALJ remains supported by substantial evidence. As explained, both the non-examining state agency physicians and the ALJ gave Dr. Schell's May 2011 opinion—the opinion that purported to record a significant deterioration in Plaintiff's mental health after March 2011—"little weight," and, as explained above, this is amply supported by substantial evidence in the record. Consequently, there is no error or inconsistency here in the manner the ALJ addressed Dr. Schell's May 2011 opinion. As for Dr. Schell's March 2011 opinion, not only did the ALJ clearly intend to give it "little weight," but despite this he also crafted an RFC that essentially took account of that opinion insofar as it was expressed in vocationally relevant terms. If there is any error here, it is harmless. *See Morgan v. Barnhart*, 142 Fed. App'x 716, 722-23 (4th Cir.2005) (holding that reversal not required upon error in assessing treating physician's opinion where error clearly has no bearing on the proceeding). Plaintiff's arguments to the contrary are not convincing.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the

Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 15) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) be **GRANTED** and the final decision of the Commissioner be upheld.

August 4th, 2015

Joe L. Webster
United States Magistrate Judge